[No. S014385. Feb. 21, 1991.]

JOSEPH L. DROCIAK, Petitioner, v.
THE STATE BAR OF CALIFORNIA, Respondent.

COUNSEL

David A. Clare for Petitioner.

Diane C. Yu and Starr Babcock for Respondent.

## OPINION

**THE COURT.**—The Review Department of the State Bar Court recommends petitioner Joseph L. Drociak be suspended from the practice of law for one year, stayed, and that he be placed on probation for two years under certain conditions, including thirty days' actual suspension. Petitioner concedes he violated Business and Professions Code, section 6106 (commission of an act involving moral turpitude), section 6068, subdivision (d) (failing to employ "such means only as are consistent with truth"), and Rules of Professional Conduct, former rule 7-105(1) (same) (presently rule 5-200(B) under new Rules of Professional Conduct that became effective May 27, 1989) (all future section and rule references are to these respective sources unless otherwise indicated). The sole issue in the present proceeding is whether the recommended discipline is excessive. We adopt the recommendation of the review department.

### I. *Facts and procedure*

The hearing panel found the following facts: Petitioner was admitted to practice law in 1964 and has no record of discipline. He has a solo practice of criminal and personal injury cases and employs support staff of six secretaries, paralegals and investigators.

In March 1985, petitioner was retained by Jane House to represent her in a personal injury action against Greyhound Bus Lines, Inc. (Greyhound). As was his custom with many of his clients, petitioner had House sign a number of undated, blank verification forms. In March 1986, petitioner filed a complaint on House's behalf. When Greyhound sought discovery through interrogatories and a request for documents, petitioner wrote to House, requesting she visit his office to prepare answers to the discovery requests. Between May and August 1986, he wrote four such letters to House but received no reply. He told counsel for Greyhound, Temple Harvey, that he had "temporarily lost contact" with House.

After receiving a number of extensions for discovery and still failing to contact House, petitioner consulted House's file and answered the interrogatories himself, attaching one of House's presigned verifications. Later he served responses to the request for documents, again attaching one of House's presigned verifications.

Trial in House v. Greyhound was set for November 1986. When petitioner failed to appear, the matter was dismissed.

In late 1986 or early 1987 Curtis B. Oliver, House's husband, appeared at petitioner's office to discuss his wife's suit. When petitioner told him the suit

had been dismissed because of his wife's failure to cooperate, Oliver informed petitioner that House had been dead since October 1985. The hearing panel found petitioner did not know of House's death until approximately the time of his conversation with Oliver. The hearing panel also found that opposing counsel Harvey became aware of the fact that House was dead in July 1986, but inexplicably declined to mention this to petitioner or the court.

The hearing panel concluded petitioner violated sections 6106 and 6068, subdivision (d), and former rule 7-105(1). Section 6106 provides, "The commission of any act involving moral turpitude, dishonesty or corruption . . . constitutes a cause for disbarment or suspension." Section 6068, subdivision (d), requires an attorney "To employ, for the purpose of maintaining the causes confided to him or her such means only as are consistent with truth, and never to seek to mislead the judge or any judicial officer by an artifice or false statement of fact or law." Former rule 7-105 (1) tracks section 6068, subdivision (d), and likewise requires an attorney to "employ, for the purpose of maintaining the causes confided to him such means only as are consistent with truth . . . ."

The panel found the following facts in aggravation: Petitioner's admission that he had other clients sign blank verifications demonstrated a "pattern of misconduct"; his acts disclosed dishonesty and concealment; his use of presigned verifications posed a threat to the administration of justice (in that unverified information in discovery responses might be inaccurate, and the opposing party might rely on that information in agreeing to an "undeserved" settlement); and petitioner "demonstrated no remorse for his actions."

The hearing panel found these facts in mitigation: In 25 years of practice, petitioner has no record of prior discipline; he believed his acts were in the best interests of his clients, many of whom move without leaving a forwarding address and are thus difficult to locate; there was no financial harm to House because, after her death, her estate was entitled to recover only her medical expenses, and those expenses had been paid by the county; and petitioner was cooperative with the State Bar, and was "candid and open in his acknowledgment of his wrongful acts." (The last finding appears inconsistent with the final finding in aggravation.)

The hearing panel recommended the above-described discipline. The review department adopted the panel's findings and recommendation on a nine-to-four vote (three of the dissenters felt the discipline excessive; the fourth believed it too lenient and would have imposed ninety days' actual suspension).

## II. *Challenge to various findings*

As noted above, petitioner does not contest his violation of sections 6106 and 6068, subdivision (d), and former rule 7-105(1). As a predicate to his attack on the discipline imposed, however, he challenges a number of ancillary "findings" made by the hearing panel and adopted by the review department. He asserts these findings are unsupported by the record and are otherwise improper and that their presence in the record cast him in a "false light" and led the review department to affirm the hearing panel's "excessive" recommendation of 30 days' actual suspension.

We agree with petitioner that some of the hearing panel's "findings" are inappropriate and unsupported by the record, and we fail to understand why the review department adopted the findings in toto, without making appropriate modifications. For example, the hearing panel (a single referee who identified himself in the panel decision as "an insurance defense attorney") twice characterized petitioner's law practice as a "mill operation" and four times alluded to "findings"—unsupported in the record, and certainly inflammatory—that petitioner allowed members of his staff to "forge" clients' names to verifications. The State Bar concedes the latter references are unsupported by the record. The State Bar also concedes that at least one other "finding" is not supported by the record. In determining the appropriate discipline, we will consider only the facts as set out above in part I of this opinion.

## III. *Discipline*

■ It is well established that we exercise our independent judgment in determining whether the recommended discipline is appropriate, excessive, or inadequate. In exercising our authority we traditionally accord great weight to the review department's determination. (*In re Prantil* (1989) 48 Cal.3d 227, 234 [255 Cal.Rptr. 890, 768 P.2d 109].)

Petitioner insists this deference is inappropriate here in light of the unsupported "findings" described above (pt. II, *ante*) that may have improperly "colored" the review department's recommendation in this case. Even granting less than usual deference, however, we still conclude the review department's recommendation is appropriate.

As noted above, petitioner does not contest his violation of sections 6106 and 6068, subdivision (d), and former rule 7-105(1). Also as noted above, as relevant here section 6068, subdivision (d), and former rule 7-105(1) are identical; accordingly, these violations are treated as one violation.

■ The findings set out above are supported by the record and amply establish petitioner's misconduct. At the time of the events in this case Code of Civil Procedure section 2030, subdivision (a), provided, "interrogatories shall be answered separately and fully in writing under oath. The answers shall be signed by the person making them . . . ." (See present Code Civ. Proc., § 2030, subd. (g) ["The party to whom the interrogatories are directed shall sign the response under oath . . . ."]; see also former Code Civ. Proc., § 2030, subd. (b).) As explained in *Deyo* v. *Kilbourne* (1978) 84 Cal.App.3d 771, 779-783 [149 Cal.Rptr. 499], such verified responses enable opposing counsel to properly assess the merits of a claim or defense, and serve an important role in the efficient resolution of disputes. The *use* of a presigned verification in discovery proceedings, without first consulting with the client to assure that any assertions of fact are true, is a clear and serious violation of the statutes and rules.

■ The Standards for Attorney Sanctions for Professional Misconduct (Rules Proc. of State Bar, div. V; hereafter standards) make violation of section 6106 punishable by disbarment or actual suspension. (Std. 2.3.) The same provision applies to a violation of former rule 7-105(1). Likewise, standard 2.6(a) makes a violation of section 6068, subdivision (d), punishable by disbarment or suspension. We employ the standards as guidelines to determine the discipline necessary and appropriate to protect the public. (See *In re Young* (1989) 49 Cal.3d 257, 268 [261 Cal.Rptr. 59, 776 P.2d 1021]; *Baker* v. *State Bar* (1989) 49 Cal.3d 804, 822, fn. 7 [263 Cal.Rptr. 798, 781 P.2d 1344].)

Petitioner insists that various factors in mitigation—his lengthy record without discipline, the asserted hardship on his office staff if he is compelled to cease practice even for a short period, his recent changes in office practices, the absence of harm to his client, and most important, his avowed intent to assist his client by his misconduct—make a 30-day actual suspension inappropriate.

We disagree. ■ Discipline is imposed in order to protect the public by deterring future misconduct by attorneys. (*Bach* v. *State Bar* (1987) 43 Cal.3d 848, 856-857 [239 Cal.Rptr. 302, 740 P.2d 414].) The impact of otherwise appropriate discipline on an attorney or the attorney's office staff is irrelevant to this purpose, and should not be considered by this court. ■ Moreover, we have repeatedly rejected petitioner's assertion that his conduct is less culpable because he was motivated primarily by a desire to protect a client. (*Codiga* v. *State Bar* (1978) 20 Cal.3d 788, 793 [144 Cal.Rptr. 404, 575 P.2d 1186] ["deceit by an attorney is reprehensible misconduct whether or not harm results and without regard to any motive

or personal gain"].) Petitioner's prior "clean" record is commendable, but it does not render the recommended 30-day actual suspension inappropriate.

Petitioner concedes there is no case involving the "particular misconduct" at issue here, but cites a number of cases in which attorneys received either less discipline than that recommended here for assertedly similar misrepresentations, or the same discipline in the face of more egregious violations. (E.g., *Schneider* v. *State Bar* (1987) 43 Cal.3d 784 [239 Cal.Rptr. 111, 739 P.2d 1279]; *In re Chira* (1986) 42 Cal.3d 904 [231 Cal.Rptr. 560, 727 P.2d 753]; *Chefsky* v. *State Bar* (1984) 36 Cal.3d 116 [202 Cal.Rptr. 349, 680 P.2d 82].) The State Bar also cites a number of assertedly similar cases, many with distinguishable aggravating facts, in which attorneys received the same (or greater) discipline recommended here. (E.g., *Bach* v. *State Bar, supra,* 43 Cal.3d 848; *Codiga* v. *State Bar, supra,* 20 Cal.3d 788; *Lee* v. *State Bar* (1970) 2 Cal.3d 927 [88 Cal.Rptr. 361, 472 P.2d 449].) Exercising our independent judgment, on the facts of this case we are satisfied that the recommended discipline, including a 30-day actual suspension, is necessary and appropriate to protect the public and to deter future misconduct.

## IV. *Disposition*

Petitioner is suspended from law practice for one year, which term will be stayed during two years of supervised probation. Conditions of this probationary period include: (i) 30 days' actual suspension and (ii) compliance with the terms set out in the review department's decision, including the requirements that he complete a course on law office management, and that he develop a law office management plan. In addition, petitioner shall take and pass the Professional Responsibility Examination within one year of the effective date of this order. This order is effective on finality of this decision in this court (see Cal. Rules of Court, rule 953(a)).