## BRADBURY *v.* BARNES *et al.*

A PARTNER has a right, generally, to buy the whole or a portion of the interest of his copartner in real estate at private sale.

A partner may purchase with his own funds and on his own account the interest of his copartner in real estate at Sheriff's sale, if there be no circumstances of fraud or of trust, apart from the partnership relation, and hold the property so purchased as a stranger could hold it.

Partners occupy a confidential relation towards each other in respect to firm business; but this does not prevent one from buying of another when both have an equal opportunity and means of knowing the value of the property and its condition.

The fact that a Sheriff's sale is open and public is *prima facie* proof that no advantage is taken by the partner purchasing of his copartner.

Whether associates in a mining claim are general partners, not decided; but if they are, still the rule qualifying the right of trustees and guardians as to purchasing from their *cestuis que* trust and wards does not apply.

B., a member of a Quartz Mining Company, received as the proceeds of quartz rock belonging to the company and crushed in their mill, $7,073.98. Subsequently, the mill, lead and ditch of the company were sold at Sheriff's sale under execution on a judgment in favor of A., against the company, for $2,558, C. becoming the purchaser for $2,756.02, funds furnished by B., receiving the Sheriff's certificate, and then assigning the same to B. Still later, W. obtains judgment against the company for $2,310.97, and under execution thereon, the same property was sold by the Sheriff to C., who received the certificate and assigned it to B., C. having bought the claim before judgment for $2,254 with funds furnished by B. Plaintiff, a member of the company, sues to cancel these certificates, prevent a Sheriff's deed to B., and to hold him, on a dissolution of the company, as trustee for the company of the interest bought at the Sheriff's sale: *Held,* that the conduct of B. is grossly inequitable, and that, if the company is willing to affirm his purchase as done for its benefit, the money paid should be credited to him on his indebtedness, and the title of the property go to or remain in the company, unaffected by the transaction.

*Held, further,* that if B. paid the judgments against the company, he, as a member, would be entitled to recover of his associates contribution for their proportion; but that he could not make this payment through the process of an assignment and then enforce the judgment against the company by selling out the property and buying it in—especially as he had in hand at the time more money of the company than he paid for the judgments.

The decree in this case directed an accounting and sale of the property of the company, etc., and this Court held that portion of the decree ordering a sale to be premature, and therefore modified it by directing the account first to be taken, showing how the concern stands, what is due and what the assets, before the property is ordered to be sold.

In this case each party to pay his own costs in the Supreme Court.

APPEAL from the Seventeenth District.

Bill by one member of "The American Quartz Mining Company" against his comembers and others, for dissolution and account, and for other purposes. The business of the company was to extract gold from quartz rock. The case was tried by the Court, and the following facts found, to wit: The property of the company consists of a quartz mill, lead and ditch in Sierra county—the business of the company being transacted and its books kept by a President, Secretary and Treasurer. In September, 1859, a quantity of quartz rock belonging to the company was crushed in the company's mill, and yielded $7,073.98, no part of which was credited on the books of the company, but the whole was received and appropriated by defendant Barnes, none of it going to the other members, or for their debts, except as hereinafter mentioned. October 7th, 1859, one Andrews obtained judgment against the company for $2,558 and twenty-four dollars and sixty-eight cents costs, and under execution thereon the Sheriff sold the property of the company, on the twenty-ninth of the same month, to one Crafts for $2,756.02, and executed to him a certificate of sale, which he at once assigned to defendant Barnes, who furnished the money bid according to previous arrangement between them. November 8th, 1859, one Cunningham obtained judgment against the company for $2,310.97 and forty-nine dollars costs, and under it the Sheriff, December 3d, 1859, sold the same property to Crafts, and executed to him a certificate of sale, which he, on the same day, assigned to Barnes. Crafts bought the demand of Cunningham before judgment for $2,254 furnished by Barnes, who supposed the demand to be in judgment. The Sheriff also sold the property for the State and county tax of 1859 to one Ellis, who received a certificate of sale, and subsequently sold and assigned the same to Barnes for one hundred and nineteen dollars. The company is in debt, but to whom or in what amount does not appear. All parties interested desire the judicial dissolution of the company.

On the foregoing facts, the Court below concluded in law, "that defendant Barnes, having funds of the partnership in his hands, made the purchase of the certificates of sale of the company's

9

property, and the interest therein conveyed, as trustee for the partnership, and therefore must be restrained from transferring or disposing of the same; that defendant White, the Sheriff, should be restrained from making deeds for the property described in said certificates, and that said certificates must be canceled; that an accounting must be had between the partners, and between the partnership and third persons, which will be taken by the receiver and reported to this Court; that in the accounting between the partners, defendant Barnes should be charged with the sum of $7,073.98 received by him as proceeds of the said quartz rock, and credited with the sums paid for said Sheriff's certificates of sale; that said partnership must be dissolved; that the partnership property must be sold by the Sheriff in the same manner, and upon the same notice, as is required upon sales of real property under execution at law, and the proceeds paid into Court to be applied: 1st, to the payment of the costs herein, including the amount allowed and to be allowed to the receiver; 2d, to the payment of the liabilities of the partnership to third persons; 3d, to the payment of the debts due from the partnership to its individual members; 4th, the remainder to be divided among the partners in proportion to the shares or interests by them respectively held in the partnership."

Judgment accordingly. Defendants appeal.

*McConnell & Garber,* Appellants, upon the several propositions discussed by the Court, cited 1 Story's Eq. Jur. secs. 2087, 310, 313, 316, 338; Story on Part. secs. 174, 311 *et seq.; Featherstonaugh* v. *Fenwick,* 17 Ves. 298; *Faucett* v. *Whitehouse,* 1 Russ & Mylne, 132; *Baird* v. *Baird,* 1 Dev. & Batt. 524; *Farnam* v. *Brooks,* 9 Pick. 212; Collier on Mines, ch. 3; Levi on Mercantile Law, 147; 1 Story's Eq. Jur. sec. 346.

*Alonzo Platt,* for Respondent, cited Collier on Mines, 78–80.

BALDWIN, J. delivered the opinion of the Court—COPE, J. concurring.

There can be no doubt that one partner may purchase with his own funds and on his own account the interest of his copartner in

Bradbury *v.* Barnes.

real estate at public sale, if there be no circumstances of fraud or of a trust, apart from this relation, and so purchasing hold the property as a stranger might.   It is true, that partners occupy confidential relations towards each other, but this is in respect to the firm business; but this relation does not forbid one from buying of another, when both have an equal opportunity and means of knowing the value of the property and its condition.   The fact that the Sheriff's sale is public and open, is itself *prima facie* proof that no advantage is taken; and no reasons of policy exist to restrain bidding by other partners than the defendant, and who would be more disposed to bid, probably, than strangers.   If associates in a mining claim are to be regarded as general partners, a point which we do not decide, still we do not think the rule applicable to trustees and *cestuis que trust*, guardian and ward, which qualifies the right of purchase by the trustee of the *cestui que trust* can be held to apply. Generally, one partner has a right to buy the whole or a portion of the interest of his associate at private sale as he might purchase of a stranger, and we can see nothing which should deny or qualify this right in the fact that the sale is made through the instrumentality of the officer acting in this respect for the partner.   ( *Gunter* v. *Laffan*, 7 Cal. 588.)

But this record presents a different case.   The findings of the Court are that the plaintiff received some $7,000 of money belonging to the company, and wi` ``he had this money in his hands, bought up some judgments against the company, using the name of another party, and also a tax title in the same way.   This conduct would be grossly inequitable.   The charitable inference would seem to be that he made this purchase for the benefit of the company, and therefore, if the company is willing to affirm it as done for the benefit of the concern, the amount of the money paid should be credited to Barnes, on his indebtedness, and the title go to or remain in the company, unaffected by this arrangement.   If Barnes paid the judgment against the company, he being one, he would be entitled to recover of his associates contribution for their proportion, but he could not make this payment through the process of an assignment and then enforce the judgment against the company by selling out the property and buying it in—especially if he had in

Bradbury *v.* Barnes.

his hands at this time money of the company to a larger amount than that paid by him to take up the judgment. We have looked over the proofs, and do not feel disposed to disturb the finding. The decree for the sale of the property seems premature. It is more regular and better that the account should be first taken, showing how the concern stands, what is due and what the assets, before the property is ordered to be sold.

The decree will be modified in this respect, and is affirmed otherwise. The cause is remanded for further proceedings. Each party to pay his own costs in this Court.