[Civ. No. 17848. Second Dist., Div. Three. May 9, 1951.]

CLYDE G. RICE, Respondent, v. JACK A. BROWN et al., Appellants.

*A hearing in the Supreme Court was granted on December 6, 1950.

Harry William Elliott and Rodd Kelsey for Appellants.

Elmer J. Moody, Arthur L. Ball and Chester C. Kempley for Respondent.

BARTLETT, J. pro tem.—This is an appeal from a judgment rendered in favor of plaintiff and respondent for $12,-000 in an action for an accounting and for a dissolution of an alleged partnership.

Respondent's first and second causes of action allege the existence of a partnership between respondent and appellants. His third cause of action alleged that appellants and respondent entered into a joint venture. The fourth cause of action in the complaint alleged facts which would indicate that the relationship between the parties was that of employer and employee. In their answer the appellants denied that any partnership existed, denied that there was any joint venture and alleged affirmatively that the relationship between appellants and respondent was solely that of employer and employee.

It developed that the original arrangement entered into on March 16, 1944, between respondent and appellant Jack A. Brown was between respondent and Jack A. Brown but that later, on January 26, 1946, the defendant William A. Brown came into the enterprise. The whole arrangement between these parties came to end on August 1, 1946.

During the course of the trial the court decided that an order of reference should be made and that the referee should find sums which would represent one-half of the profits of the original enterprise received subsequent to January 1, 1946, on plastering contracts entered into prior to August 1, 1946, and in which respondent William A. Brown did not participate; also one-third of the profits received subsequent to January 1, 1946, on plastering contracts entered into prior to August 1, 1946, and in which appellant William A. Brown was entitled to participate. The order of reference read in part as follows: "That Ralph E. Sperry, a public accountant in the County of Los Angeles be, and he is hereby, appointed referee to take and state an account to enable this court to enter final judgment in the correct amounts and the parties to this action are hereby required to produce before said referee all books, papers and writings in their possession and control relating to their joint venture and transactions between themselves and said referee is hereby empowered to examine any parties to this action as well as other witnesses

and to employ other accountants and bookkeepers to further and facilitate said accounting and that he report the result of said accounting to this court.

''That the Court reserves the right and jurisdiction to make such other and further orders with respect to said accounting and a judgment based thereon and to direct the issuance of subpoenas and subpoenas *duces tecum* to be used in furtherance of the duties to be performed by the referee and to approve or modify the report of said referee and to enter final judgment accordingly upon motion of either party.''

Thereafter the referee filed a document consisting of 45 pages termed ''Referee's Report on Accounting.'' Appellants objected to the report on the same ground raised here and moved to strike it. The objections were overruled and the motion denied and, entirely on the basis of this report, the court found appellants were indebted to respondent in the sum of $12,000 and entered judgment for that amount.

Appellants contend that this judgment should be reversed for the reason that by the conduct of the referee and the nature of the report rendered by him, there was no legal evidence before the court to support the amount of the judgment; that the report itself was illegal and void and that the respondent is being deprived of his property without due process of law.

This was a compulsory reference by the court on its own motion under the provisions of section 639 of the Code of Civil Procedure. It is to be observed at the outset that no trial or hearing of any kind was had before the referee. No witnesses were sworn, no documents were identified upon the oath of any witness nor was any opportunity given to examine any witness or to introduce evidence before the referee. The referee in this case was appointed by the court for the decision of particular matters inconvenient to be heard by the judge and such a reference is a quasi judicial proceeding. (22 Cal.Jur. 685.) It would seem axiomatic that a referee cannot make decisions based upon information or matters which would be inadmissible before court. An examination of this report of the referee is of interest. The beginning of the report reads: ''Pursuant to INTERLOCUTORY JUDGMENT AND ORDER OF REFERENCE signed June 7, 1949, by Carl A. Stutsman, Judge, the books and records of Jack A. Brown et al. have been carefully examined, taking into consideration the system of internal control and the accounting procedures of the business. The accounting records and other

supporting evidence were examined by methods and to the extent deemed appropriate but the examination did not constitute a detailed audit of all transactions.'' What books and what records of Jack A. Brown, et al., were examined are not identified and there is no way of telling what the referee means as to the other supporting evidence which he examined. It is stated, after setting forth certain jobs referred to in Schedules A, B, C, D and E attached to the report, that: ''In addition to the above jobs, it was determined from a study of Account 194 entitled 'Profit on Completed Jobs,' which was maintained until November 30, 1946 and which is analyzed as *Schedule F*, that Clyde G. Rice was entitled to share in the gross profit from other jobs not specifically analyzed to the extent of $24,583.66 (See Schedule I).'' The report further states: ''It is not clear as to whether it was agreed that William A. Brown have a one third interest in business arising after the date of the agreement *or* that William A. Brown have a one third interest in business completed and gross profit or loss ascertained after the date of the agreement.' Attorneys for the plaintiff state that there was very little testimony on this exact point. The defendants particularly urged that William A. Brown terminated his salary basis of employment as at January 31, 1946.'' Instead of taking any evidence upon this subject it is evident that the referee merely contented himself with ex parte conversations with counsel and after that made this statement: ''After consideration, it is determined that the plaintiff shall share in profits determined and realized on and after February 1, 1946 only to the extent of 33⅓ per cent.'' The report further states: ''A number of the jobs examined involved *change orders* and/or *extras* which were performed after July 31, 1946. It was found in certain contracts that provision was made in the original contracts as to the basis of payment to the contractor in the case of *extra* work. After due consideration, it is the view of the Referee that it is normal and consistent with prevalent practice to assume that there will be changes or extras on many jobs for which contracts are entered into and that such changes or extras constitute a reasonable expectancy and are inherently a part of the original contract.'' This is, of course, quite important for the reason that it is evident that other contracts for extras were entered into after July 31, 1946. The evidence concerning these other contracts is nowhere to be found and, in our opinion, it would require evidence for a court to determine whether or not the prevalent practice is as

set forth in the referee's report. Surely it cannot be determined by the opinion of the referee and it would depend in great part on the nature of the extras as to whether or not they would be inherently a part of the original contract. That this matter is important is shown by the reference to collections made as late as July 16th and 18th of 1947 based on a cost plus arrangement. In that connection the referee sets forth a letter dated October 18, 1946, which stated in part as follows: "We have been authorized by the Architects on the C. E. Toberman Building to proceed with considerable additional work on the interior of this building. Your sub-contract on this job has been materially affected by this change and you are requested to contact our Supt., Mr. E. Hauser, or this office direct regarding the work involved that will be extra to your present contract." This letter was addressed to Jack A. Brown by R. J. Daum Construction Company and in the absence of any explanatory testimony would appear to refer to new work authorized after the accounting date. As to this the referee says: "Since the Original contract was signed on or about January 15, 1946 it would have been very impractical for this extra work to have been performed by any other contractor and it is therefore ruled that the 'cost plus' extra portion of the job is an inherent portion of the original job." In the absence of any testimony on the subject it would be doubtful if the court itself would have any right to make such a ruling. The same situation existed in regard to another job on the Wilshire Medical Building. As the gross profit on this job including extras was $17,139.98, it was a material matter, especially as the referee states: "It is ruled that the plaintiff is entitled to share in the entire profit from this job." From Schedule A attached to the report it will be noted that a portion of the report was taken from figures from an accounting by one Lowrie and one Bontems which will be referred to later. Document I attached to the report of the referee has attached to it this statement by the referee: "It appears that this statement was prepared by Mrs. H. Gilchrist." Under the heading of "Referee's Comments" we find the following in regard to Document III: "This document consists of a Balance Sheet as at July 31, 1946, a Profit and Loss Statement for seven months ending July 31, 1946 and a Schedule of Jobs in Progress as at July 31, 1946 and was prepared by James W. Bontems and Co., Certified Public Accountants, as a basis for determining the final accounting with Clyde G. Rice. It is to be noted that the last two pages

of the document appear as Defendant's Exhibit H and again as Defendant's Exhibit I.'' Document IV discloses the following under ''Referee's Comments'': ''Presented herewith is a copy of two pages of work papers which, it is understood, were prepared by Irene Lowrie who was a witness in the case and was formerly employed by the Jack A. Brown organization. These two pages show how the sum of $11,380.89 was determined as being due to Clyde G. Rice.'' In response to the complaint of the appellants that ''The referee further, as evidenced by the last mentioned footnotes, imported opinion evidence contained in the accounts prepared by Lowrie and Bontems, who were never called as witnesses and whose statements of account were not prepared under the supervision of the referee or by methods and procedures known to the referee,'' the respondent replies that these very documents were introduced at the trial of the case as appellants' ''Exhibits H and I.'' This is only partially correct as an examination of these exhibits discloses and, furthermore, it does not answer the gist of appellants' argument.

■ It is stated that the court's order appointing the referee was ambiguous and uncertain. However, the order of reference which empowered the referee to examine the parties as well as any other witnesses and reserve to the court the power to make other and further orders with respect to the reference and to direct the issue of subpoenas and subpoenas duces tecum to be used in furtherance of the duties to be performed by the referee certainly contemplated quasi judicial proceedings, that the referee would hold hearings, that any testimony given before him would be under oath and that any document received in evidence would be identified upon the oath of witnesses. Section 2103 of the Code of Civil Procedure provides that the law respecting the evidence on a trial before a jury is equally applicable on a trial before a referee. ■ The conduct of the referee in this proceeding deprived the appellants of their day in court on a most important phase of the trial, the amount for which judgment was returned against him. ■ The rule is set forth in *In re McNamee,* 131 Cal.App. 30 at page 31 [20 P.2d 722] : ''Respondent virtually concedes this but contends that 'the matter was referred to the Referee to investigate all the facts and to report, as provided under section 18 of the Land Registration Act; and it has been held by this Court that such proceeding is proper even under sections 638 and 639 of the Code of Civil Procedure.'' (*In re Application of Reed,* 204 Cal. 119 [226

P. 948].) We find nothing in this act, or sections of the Code of Civil Procedure referred to, vesting a referee with power to make findings not based on evidence regularly admitted at the hearing. It certainly cannot be maintained that a referee can be clothed with power not possessed by the court appointing him. 'We have repeatedly held, that a trial before a referee should be conducted in the same manner as though it was had before a court.' (*Goodrich and Myers* v. *Mayor and Common Council of Marysville,* 5 Cal. 430, 431.)''

Appellants contend that the court erred in finding against their contention that an account was stated between the parties. Suffice it to say that there was sufficient evidence in the record to sustain the finding of the court.

Appellant also contends that ''The finding of the court that there was a joint enterprise between plaintiff and defendants required as a matter of law an additional finding that plaintiff was a duly licensed contractor.'' An examination of the findings of fact and conclusions of law disclosed no direct finding of either a partnership or a joint venture. The only allusion to a joint venture is found by way of recital in the conclusions of law: ''That the contract of joint adventure entered into on the 16th day of March, 1944 as found in paragraph I of the Findings of Fact and as amended as found in paragraph III of the Findings of Fact was a valid subsisting contract until terminated by defendant Jack A. Brown.'' The findings referred to in this quoted paragraph would raise an inference that a partnership existed but not a joint venture. However, both parties seemed to be in accord that there was neither a partnership nor a joint venture shown by the evidence but a contract of employment as alleged in respondent's fourth cause of action and in the defendants' answer. The respondent correctly states: ''Certainly the evidence does not disclose respondent had to perform or performed any duties of any kind in connection with the actual plastering work. Certainly the evidence shows that he did not make any bids and did not agree to undertake or offer to undertake, or even purport to have the capacity to undertake or to submit bids on any plastering contracts. According to the testimony of appellant Jack Brown, which had been previously alluded to with references, respondent did not submit any bids. The only thing respondent did in connection with bids, according to such testimony, was to convey to the general contractor the cost of plastering on the job as fixed by the appellant Jack Brown. In so doing the respondent

was simply acting as a means of communication. To summarize the respondent's position: He agreed to act as salesman and an estimator of the quantity of plastering of the different characters called for by plans and specifications. Furthermore, according to the testimony, that is all that he ever did do." Appellants state: "Respondent did not at any time claim any vested right or interest in either specific property or what might be termed a partnership interest. From this it is clear that the essential characteristics of a partnership or joint venture were not present. . . . There can be no question from the evidence but that Respondent neither had nor claimed to have or be entitled to these or any one of these interests of a partner, either during the relationship or upon or after its termination. It may be concluded from the foregoing and from the evidence that Respondent's right to participate in profits arose from the fact that a percentage of such net profits was the *measure* of his salary or wage and not an interest arising from any relationship or partnership or coadventurer." An examination of the transcript discloses that both appellants and respondent are correct in their statement as to the testimony before the court and such being the record if the recital in the conclusions of law as to a joint venture can be construed to be a holding that a joint venture existed, then the court was in error in such a determination. If, on a retrial of this action, the evidence developed shows that either a partnership or a joint venture did as a matter of fact exist, the question appellants raise would be of importance, but in the present state of the record, for the reasons referred to, the question is moot.

The judgment is reversed.

Shinn, P. J., and Vallée, J., concurred.