[No. E026412. Fourth Dist., Div. Two. June 8, 2001.]

CARL E. JONES et al., Plaintiffs, Cross-defendants and Appellants, v. RAYMOND J. WAGNER et al., Defendants, Cross-complainants and Respondents.

## COUNSEL

Caldwell, Kennedy & Porter and Ruth Ann Magnuson for Plaintiffs, Cross-defendants and Appellants.

Thorpe and Thorpe, Vincent W. Thorpe and Brendan J. Thorpe for Defendants, Cross-complainants and Respondents.

## OPINION

**HOLLENHORST, J.**—Plaintiffs Carl E. and Sally Jones brought this action to recover damages for alleged breach of contract and constructive fraud. Defendants, Raymond J. and Joan Wagner, were their partners in the ownership of a beachfront townhouse in Oxnard, California. The trial court rejected Mr. and Mrs. Jones's damages claims, ordered dissolution of the partnership, and appointed a referee to render an accounting. Following receipt of the accounting, the trial court entered a final judgment dissolving the partnership, awarding $187,885.74 and prejudgment interest to the Wagners on their cross-complaint, and resolving an issue relating to personal property owned by the partnership.

Mr. and Mrs. Jones appeal, contending that the trial court erred in failing to find constructive fraud. They also attack the accounting, contending that the trial court erred in failing to uphold their objections to the accounting. Finally, they raise issues relating to application of the antideficiency statute and the award of prejudgment interest.

### STIPULATED FACTS

The parties stipulated to the following facts:

"1. The Wagners and the Jones[es] formed a 50/50 partnership to buy an Oxnard beach front townhouse in mid-1990.

"2. By the terms of their agreement, the partnership agreed to and did purchase the townhouse for $650,000.00.

"3. The Wagners agreed to and did contribute $301,303.64 in cash for the down payment. Jones[es] agreed to and did contribute $107,000 in cash and promised to make all payments on a $250,000.00 mortgage.

"4. Since the Jones[es]' cash, plus their promise to make the monthly mortgage payments added up to $351,127.89, the parties agreed to equalize their capital contributions 50/50. Thus, the Wagners paid an additional $22,493.69 as set forth in the 5/26/92 Jamestown Agreement.

"5. Before 1993, property values dropped.

"6. Beginning December of 1993, no further payments were made on the mortgage.

"7. Jones[es] requested the Wagners utilize funds from a joint bank account to make mortgage payments. The Wagners refused.

"8. On 3/14/94 a Notice of Default was recorded against the townhome. As of that date, the sum of $8,849.51 was due on the mortgage.

"9. Delinquent installments on the mortgage eventually reached a balance due of $14,270.00 and the bank foreclosed on the property on August 19, 1994.

"10. Both Jones and Wagner attended the foreclosure sale. A bid on the property by Mr. Wagner's pension trust and profit sharing trust was successful and the trusts purchased the townhouse at the foreclosure sale for $263,500.37 ($263,210.52 sales price + $289.85 documentary tax; Trustee's deed.)

"11. A Notice to Surrender Possession was served on the Jones[es].

"12. Thereafter Jones[es] vacated the premises.

"13. The furniture and furnishings removed from the townhome were placed in storage."

### ALLEGED CONSTRUCTIVE FRAUD

Mr. and Mrs. Jones first contend that the trial court erred in not finding the Wagners committed constructive fraud. The specific conduct relied on to establish fraud is (1) the Wagners' refusal to pay the delinquent mortgage from a partnership bank account; (2) the prepayment of property taxes on the town home from that account, allegedly depleting it so funds were not available to pay the mortgage; and (3) the Wagners' payment to themselves of the sum of $3,391.90 from the partnership account.

Mr. and Mrs. Jones argue that the actions of the Wagners led to the foreclosure and thus deprived the partnership of its main asset, the town home. They further contend that the actions of the Wagners breached their fiduciary duties to Mr. and Mrs. Jones, as their partners, and that the Wagners schemed to get the property into foreclosure so that their pension

plans could buy it, thus eliminating the ownership interest of Mr. and Mrs. Jones in the property.

Mr. and Mrs. Jones rely on Civil Code section 1573: "Constructive fraud consists: [¶] 1. In any breach of duty which, without an actually fraudulent intent, gains an advantage to the person in fault, or any one claiming under him, by misleading another to his prejudice, or to the prejudice of any one claiming under him; or, [¶] 2. In any such act or omission as the law specially declares to be fraudulent, without respect to actual fraud."

Mr. and Mrs. Jones cite *Byrum v. Brand* (1990) 219 Cal.App.3d 926 [268 Cal.Rptr. 609], in which an investment adviser was sued for fraud and breach of fiduciary duty. The court noted that constructive fraud "may be *presumed* from the parties' confidential relationship or the circumstances of their dealings . . . . " (*Id.* at p. 938, original italics.) Since this species of fraud does not depend on the existence of an actual fraudulent intent, it can be shown by breach of a fiduciary duty. (*Id.* at pp. 937-938.) Thus, *Byrum* held that it was error to give the jury a special verdict form which required finding of an intentional failure to disclose certain facts. (*Id.* at p. 938.)

Mr. and Mrs. Jones also cite *Salahutdin v. Valley of California, Inc.* (1994) 24 Cal.App.4th 555 [29 Cal.Rptr.2d 463], a real estate broker case in which the court found substantial evidence to support the trial court's conclusion that the broker committed a constructive fraud by breaching his fiduciary duty to Mr. and Mrs. Salahutdin. The court said: " '[A]s a general principle constructive fraud comprises any act, omission or concealment involving a breach of legal or equitable duty, trust or confidence which results in damage to another *even though the conduct is not otherwise fraudulent.* Most acts by an agent in breach of his fiduciary duties constitute constructive fraud. The failure of the fiduciary to disclose a material fact to his principal which might affect the fiduciary's motives or the principal's decision, which is known (or should be known) to the fiduciary, may constitute constructive fraud. Also, a careless misstatement may constitute constructive fraud *even though there is no fraudulent intent.*' [Citation.]" (*Id.* at p. 562.) Later, the court said: "[T]here is no clear line establishing when a fiduciary's breach of the duty of care will be merely negligent and when it may be characterized as constructive fraud. However, a breach of a fiduciary duty *usually* constitutes constructive fraud. [Citation.]" (*Id.* at p. 563, original italics.)

There were unquestionably fiduciary duties among the partners here, as in all partnerships. (Corp. Code, § 16404.) The issue is whether there is substantial evidence to support the trial court's conclusion that the Wagners did

not breach their fiduciary duties.[1] ▮ First, the trial court found that "there was no legal or fiduciary obligation for the Wagners to use partnership funds to pay the individual liability of Jones for the Jones[es]' agreed capital contribution to the partnership." Second, the trial court found "[t]here was no duty on the part of the Wagners to prevent the partnership property from going into foreclosure." ▮ Third, the trial court found that the Wagners were entitled to bid on and buy the property at the foreclosure sale through their pension trusts.

We agree with the Wagners that the evidence is clearly sufficient to support the trial court's findings. ▮ With regard to contributions, Corporations Code section 16401 provides that each partner has an account which is credited with the contributions made by the partner. The parties stipulated that Mr. and Mrs. Jones promised to make all the payments on the mortgage, but that they failed to do so, beginning in December 1993. If the Wagners paid these sums, they would, in effect, make contributions in excess of a 50 percent capital contribution to the partnership, despite the agreement of the parties that contributions should be on a 50/50 basis.

The Wagners cite *Danelian v. McLoney* (1954) 124 Cal.App.2d 435 [268 P.2d 775] to support their position. In that case, the parties formed a joint venture to acquire certain real property. (*Id.* at p. 437.) One party agreed to pay the down payment, and the other agreed to pay principal payments on two trust deeds until $26,000 had been paid. At that point, the party paying on the trust deeds would receive a one-half interest in the properties. (*Ibid.*) Losses were to be divided equally, and the contract specifically provided that, if the one party failed to make the trust deed payments, the other could do so and thereby become sole owner of the property. (*Id.* at p. 438.) No payments were made on the trust deeds, the property was sold at a substantial loss, and the defaulting party attempted to avoid liability by arguing that the other party was the owner of the property. The court found that the other party had not invoked the provisions allowing it to make payments for the defaulting party and that, as a result, the paragraph requiring equal sharing of losses applied.

In the present case, there was no comparable agreement allowing one party to pay contributions owed by the other party, and there was no

---

[1]The trial court erred by finding that "there was no special or fiduciary relationship between plaintiffs and defendants upon which to base a finding of constructive fraud." For the reasons stated below, the error does not require reversal of the judgment.

provision allowing one party to make a contribution for the other.[2] More importantly, there was no agreement requiring such a payment for any reason, including preservation of the partnership property. Nor have Mr. and Mrs. Jones cited any statutory or case authority that even suggests that a partner has the fiduciary duty to pay delinquent capital contributions for the other partner. (Cf. Corp. Code, § 16404 [fiduciary duties of partners].) We emphasize that the parties only agreed to make 50/50 capital contributions. Neither agreed to be responsible for the capital contributions of the other under any circumstances, and their agreement that the contributions would be equal would be violated if any such contributions were made.

Although the Wagners would have been entitled to reimbursement from the partnership funds if they used their own money to pay to preserve the partnership property (Corp. Code, § 16401, subd. (c)), they were under no obligation to do so. The agreement of the parties was that Mr. and Mrs. Jones would pay the mortgage, and they breached the partnership agreement by failing to do so. We therefore agree with the Wagners that substantial evidence supports the conclusion that they had no legal or equitable duty to make additional partnership contributions upon their partner's failure to do so.

With regard to foreclosure, the evidence supports the conclusion that the partnership could not retain the town home indefinitely if Mr. and Mrs. Jones were not making their mortgage payments. Even if, as Mr. and Mrs. Jones argue, the account was sufficient to make some payments to avoid foreclosure, the bank would obviously be forced to foreclose at some point if the mortgage payments were not being made. Clearly, the foreclosure was caused by the failure of Mr. and Mrs. Jones to make the mortgage payments as promised, not by any actions of the Wagners.

With regard to the Wagners' purchase of the property at the foreclosure sale, the law is equally clear that anyone, including a former partner, may bid at a foreclosure sale (4 Miller & Starr, Cal. Real Estate (3d ed. 2000) § 10.204, p. 621; Civ. Code, § 2924h.) Corporations Code section 16404, subdivision (e) specifically provides: "A partner does not violate a duty or obligation under this chapter or under the partnership agreement merely because the partner's conduct furthers the partner's own interest."

The Wagners cite the venerable case of *Gunter v. Laffan* (1857) 7 Cal. 588, in which our Supreme Court stated: "Even if [the parties] were tenants-in-common, or partners, there is no rule of law which would forbid one

---

[2]The agreement here was oral, and agreement was never reached on a proposed statement of understanding. The statement of understanding did not have any terms affecting the issues raised here, other than its requirement that Mr. and Mrs. Jones pay the mortgage.

partner or tenant-in-common from purchasing at a judicial sale, particularly under a judgment not obtained by him." (*Id.* at p. 593; see also *McNutt v. Nuevo Land Co.* (1914) 167 Cal. 459, 466-467 [140 P. 6]; *In re Levy & Schwab* (1900) 130 Cal. 282, 284 [62 P. 520].) Shortly after *Gunter* was decided, our Supreme Court said: "There can be no doubt that one partner may purchase with his own funds and on his own account the interest of his copartner in real estate at public sale, if there be no circumstances of fraud or of a trust, apart from this relation, and so purchasing hold the property as a stranger might. It is true, that partners occupy confidential relations towards each other, but this is in respect to the firm business; but this relation does not forbid one from buying of another, when both have an equal opportunity and means of knowing the value of the property and its condition. The fact that the Sheriff's sale is public and open, is itself *prima facie* proof that no advantage is taken; and no reasons of policy exist to restrain bidding by other partners than the defendant, and who would be more disposed to bid, probably, than strangers." (*Bradbury v. Barnes* (1861) 19 Cal. 120, 122-123.)

Mr. and Mrs. Jones do not cite any contrary authority. We agree with the trial court's conclusion that "[i]t was not a violation of any duty owed by the Wagners to the Jones for these employee trusts to acquire the property at foreclosure sale."

In summary, we agree with Mr. and Mrs. Jones that the Wagners had fiduciary duties. Corporations Code section 16404 defines those duties as the duty of loyalty and the duty of care in the conduct of partnership business. Nevertheless, we agree with the Wagners that no breach of those duties was shown or, at least, that substantial evidence supports the trial court's decision that there was no breach of any duty by the Wagners that would justify an award of damages for constructive fraud.[3]

## OBJECTIONS TO THE ACCOUNTING

Mr. and Mrs. Jones next contend the trial court erred in overruling their objections to the accounting. First, they argue that the trial court erred by not requiring the accountant, Mr. Wayne, to disclose the evidence that he reviewed and relied on as the basis for the accounting. They cite *Rice v. Brown* (1951) 104 Cal.App.2d 100 [231 P.2d 65]: "It would seem axiomatic that a referee cannot make decisions based upon information or matters which would be inadmissible before court." (*Id.* at p. 103.) The court then said: "What books and records of Jack A. Brown, et al., were examined are

---

[3]Constructive fraud is usually based upon a failure to disclose relevant matters to the other partners. Reliance and causation must also be shown. (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 673, pp. 131-132.) None of these elements are present here.

not identified and there is no way of telling what the referee means as to other supporting evidence which he examined." (*Id.* at p. 104.)

We are not persuaded. The reference in *Rice* was considerably broader than the reference here. It included the power to examine witnesses, including the parties to the action. In the face of this reference, the court held that the reference order "contemplated quasi judicial proceedings, that the referee would hold hearings, that any testimony given before him would be under oath and that any document received in evidence would be identified upon the oath of witnesses." (*Rice v. Brown, supra,* 104 Cal.App.2d 100, 106.) Accordingly, the court held that the findings had to be based on evidence admitted at the hearing. (*Id.* at p. 107.)

In this case, the reference did not contemplate hearings or the taking of evidence. The court merely appointed Mr. Wayne to render an accounting under Code of Civil Procedure section 639, subdivision (a), and ordered the parties to deliver to him "all books and accounting and bank records of the partnership, or any other documentation requested by the accountant." Mr. Wayne's report recaps the capital accounts of the parties, and it contains a number of schedules on various topics. However, it does not state what documents were received or reviewed. Mr. and Mrs. Jones contend that such a list was necessary in order for them to fully review and object to the accounting.

The Wagners rely on *De Guere v. Universal City Studios, Inc.* (1997) 56 Cal.App.4th 482 [65 Cal.Rptr.2d 438]. In that case, the court analyzed the reference provisions and cases in some detail. It noted that a reference for an accounting under Code of Civil Procedure section 639, subdivision (a) is based on the rationale that "[t]he reference is allowed because a trained accountant is generally better able to efficiently and inexpensively examine a 'long account' than a trial court judge is able to do through adversarial court proceedings. The tension in this area is over how much latitude the accountant referee may exercise in making factual determinations. It does not matter that a particular referee has legal training. The scope of the reference is set by the constitutional limitations on delegation of judicial power to a referee. [¶] To do a proper examination of a long account, a referee needs to know two things—each of which is within the proper ambit of his or her authority. First, the referee must know the proper accounting methodology to be applied. Second, the referee must have the accounting records at issue. The parties must obtain the necessary records though discovery to enable the referee to perform the examination." (*DeGuere,* at p. 499.)

The duty to account to the partnership is part of each partner's duty of loyalty. (Corp. Code, § 16404, subd. (b)(1).) To examine a long account

under Code of Civil Procedure section 639, subdivision (a), the accountant may examine the books and records of the partnership, and the partnership is required to make its books and records available to partners and their agents. (Corp. Code, § 16403.) Such books and records are business records and therefore qualify as an exception to the hearsay rule. (Evid. Code, §§ 1270-1272.) In addition, the accountant may contact the partners and third parties to obtain and verify information, and to fill in omissions in order to audit and reconstruct the books and records of the partnership. "Because of their fiduciary relationship, the records sought by plaintiffs herein were not the private property of defendant, but were subject to the rights guaranteed to the other partners to have access to all information pertaining to partnership affairs." (*McCain v. Phoenix Resources, Inc.* (1986) 185 Cal.App.3d 575, 579 [230 Cal.Rptr. 25].) ■ In order to examine a long account under a Code of Civil Procedure section 639, subdivision (a) reference, the accountant should therefore be given access to all information he or she deems necessary to do the job, regardless of whether the specific information was previously introduced into evidence or not. After all, as the Wagners point out, the purpose of a reference is to avoid introduction into evidence at trial of each invoice, check or document which is needed to create the accounting.

Even if we assume the trial court erred by overruling the objection of Mr. and Mrs. Jones to the accounting on grounds that the records used by the accountant were undisclosed, Mr. and Mrs. Jones have not shown that they were prejudiced by its decision. We agree with the trial court: "The purpose of the accounting is for each side to furnish their business records which order was made by the court. And I understand each side did submit their accountings, their books and records. And based upon that, the accountant had made his determination. I do not think that it's a valid objection to say that the accountant cannot rely on any documents which are not admitted into evidence. That would defeat the purpose of the accounting." The trial court then offered Mr. and Mrs. Jones the opportunity to examine the accountant as to the basis for his conclusions. They did not accept the offer. Mr. and Mrs. Jones therefore waived the opportunity to examine the accountant further.

Second, Mr. and Mrs. Jones argue that the trial court erred in allowing the accounting to stand because it was based on a document that was excluded at trial. The referenced document was an accounting prepared by Mr. McGinnis and offered by the Wagners at trial. Mr. McGinnis was called as a witness at trial, but Mr. and Mrs. Jones objected to his testimony on grounds that he had not been designated as an expert. The trial court sustained the objection, and marked the accountant's report for identification only.

Mr. and Mrs. Jones now contend that Mr. Wayne improperly relied on the accounting prepared by Mr. McGinnis, primarily because both reports have the same closing date, March 14, 1995.[4] We reject the contention because we find no evidence that Mr. McGinnis relied on Mr. Wayne's report and, even if he did so rely, no harm is shown to have resulted. An examining accountant must start somewhere, and the accounting records of the partnership and the reports prepared by the partnership's accountant are clearly relevant to the inquiry. Even if we assume that Mr. McGinnis had improperly prepared the accounts (and there is no evidence that he acted improperly in any way), it was necessary for Mr. Wayne to review the partnership's accounts in order to determine whether or not he agreed with them.

The fact that Mr. McGinnis's statement was excluded from trial does not alter our conclusion. The exclusion was on procedural grounds for failure to designate Mr. McGinnis as an expert witness. It had nothing to do with the merits or demerits of his statement. In addition, detailed accounting records may properly be excluded at the trial of the legal issues on grounds that they are irrelevant. This exclusion does not mean that it was improper for Mr. Wayne to consider the records if he found them relevant to his inquiry. In addition, we note that the Wagners' attorney represented to the court that Mr. Wayne agreed not to review the statement which had been prepared by Mr. McGinnis, and that he did not do so.

We agree with the Wagners that Mr. and Mrs. Jones have not cast doubt on the accounting, or shown any reason to overturn it. Since prejudicial error has not been shown, the trial court's decision to overrule Mr. and Mrs. Jones's objection on this ground was the proper decision.

Third, Mr. and Mrs. Jones argue that the accountant failed to take into account a written agreement dated May 26, 1992, and referred to by the parties as the "Jamestown agreement." Since the purpose of that agreement was to equalize the capital contributions of the parties, Mr. and Mrs. Jones argue that Mr. Wayne should have considered the accounts equal from that point on.

However, Mr. Wayne's report, which was subsequently presented as an augment to the record, shows that he was aware of and considered the Jamestown agreement.[5] Mr. Wayne's analysis of capital accounts shows that he was aware of the Jamestown agreement, and that he considered it. We also reject Mr. and Mrs. Jones's claim that Mr. Wayne should have considered the capital accounts equal from that point on. As Mr. Wayne's analysis

[4]March 14, 1995, was the date the partnership bank account was closed.
[5]By order filed October 31, 2000, we augmented the record to include Mr. Wayne's report.

shows, the financial situation continued to change after the Jamestown agreement, and Mr. Wayne considered the subsequent transactions in reaching his conclusions. There is no basis in the record for the argument that the Jamestown agreement was a final resolution of the parties' capital accounts. After all, the agreement was made nearly three years before the partnership account was closed.

Fourth, Mr. and Mrs. Jones argue that Mr. Wayne exceeded the proper scope of an accounting. This contention arises from the fact that the original partnership also included a boat which was moored near the townhouse. The boat was the subject of other litigation, which was eventually consolidated with this case. However, issues relating to the boat were settled and the parties stipulated that this case should "continue except that all claims arising out of or relating to the purchase, operation and ownership of the Boat shall be deemed settled and released and all expenses in connection therewith shall be omitted from any accounting for the partnership."

Notwithstanding the stipulation, the trial court's reference order asked Mr. Wayne to render "an accounting to the Court of the rights and liabilities as between the partners to that certain oral general partnership agreement governing their ownership of a certain condominium and boat." Accordingly, Mr. Wayne's accounting considered that Mr. Wagner had contributed $6,700 for the boat. The accounting also included an exhibit that recapped boat expenses. The total from this exhibit, $24,907.67, was carried into the accountant's "itemized categories report" and subsequently into the analysis of capital accounts. The total boat expenses were divided evenly in the analysis of capital accounts, and it therefore had no impact on the total of those accounts.

Mr. and Mrs. Jones objected to the inclusion of the boat expenses. At the hearing, the trial court sustained the objection to inclusion of the capital contribution by Mr. Wagner in the sum of $6,700, and ordered the capital account adjusted accordingly. Since the boat expenses were divided equally, the trial court did not make any adjustment to them. In other words, although the boat expenses should not have been included in the accounting, their inclusion had no effect on it. No prejudicial error appears. (Evid. Code, § 353, subd. (b).)

Fifth, Mr. and Mrs. Jones argue that the trial court erred in accepting the accounting because it did not cover the entire period of the existence of the partnership. As noted above, the accounting ended on March 14, 1995, the date the partnership bank account closed. Mr. and Mrs. Jones argue that the accounting should have included the entire period up to August 27, 1998,

which was the date the trial court ordered the partnership dissolved. However, the trial court ordered the partnership dissolved as of August 19, 1994, a date that was eight days after the filing of the complaint.

Since Mr. Wayne did not consider the three-year period between March 14, 1995, and August 27, 1998, Mr. and Mrs. Jones argue that the accounting does not consider the remaining assets of the partnership such as the bank accounts and the stored furniture. However, the partnership bank accounts were closed on March 14, 1995. As to the stored furniture, there was some controversy over the payment of storage fees. The trial court eventually ordered that the furniture be sold and the proceeds be applied to accrued storage fees and costs, and the balance to be distributed in accordance with the judgment. There was therefore no need for an appraisal or adjustment of the partner's capital accounts for the furniture. Accordingly, we find that Mr. and Mrs. Jones have not shown any error in this regard.

## THE PROMISSORY NOTE

Mr. and Mrs. Jones next contend that the trial court erred in failing to give them the protection afforded by the antideficiency legislation, Code of Civil Procedure section 580b. This contention arises out of the fact that the Jamestown agreement states that it is accompanied by a promissory note dated May 6, 1992, which was intended to equalize the capital accounts and ownership interests of the parties. The accompanying note is payable by Mr. and Mrs. Jones to the Wagners for the sum of $250,000. It states: "$250,000 is the original principal balance of this note. However, the actual payoff amount of this note is equal to the payoff amount of the note secured by the first deed of trust of record on the subject property in favor of Great Western Bank . . . ." In other words, since Mr. and Mrs. Jones were having some difficulty paying the mortgage, and since their contribution to the partnership included payment of the mortgage, the parties apparently desired to solidify the future first mortgage payment obligation of Mr. and Mrs. Jones by providing, in essence, that Mr. and Mrs. Jones would pay the balance of the mortgage to the Wagners if it was not paid to the bank.[6]

Mr. and Mrs. Jones's present theory is that the trust deed securing the May 6, 1992 promissory note was a second trust deed on the property. They therefore argue that the Wagners had to rely on the security of the trust deed,

[6]The factual record on this issue is unsatisfactory. Mr. and Mrs. Jones cite exhibits D through G, P-4, and P-9. Although they requested early transmission of exhibits, they did not include exhibits D through G or P-4 in their request. Exhibit P-7 is a capital account reconciliation which has no relevance here. Although we have located the Jamestown agreement and the May 6, 1992 promissory note elsewhere in the record, we have not located the trust deed itself.

and that security was eliminated by the foreclosure sale. Thus, they conclude that there is no basis for an award against them because a judgment against them on the note was a violation of the antideficiency protection afforded by Code of Civil Procedure section 580b.

Mr. and Mrs. Jones cite *Lawler v. Jacobs* (2000) 83 Cal.App.4th 723 [100 Cal.Rptr.2d 52]. In that case, the seller sued to collect on a purchase money note secured by real property. The buyers had waived antideficiency protection, and the seller had subordinated his security to a third party commercial lender. The trial court entered a deficiency judgment which was reversed by the appellate court. The appellate court held that the waiver of the antideficiency law was against public policy and void. (*Id.* at pp. 736-738.) In a passage cited by Mr. and Mrs. Jones, the court said: "Under 580b, a vendor taking back a purchase money trust deed may look only to the security for recovery of the debt; no deficiency judgment will lie following a sale under the trust deed." (*Id.* at p. 732.)

While the principle is unassailable, it does not help Mr. and Mrs. Jones. First, the note did not represent a purchase money obligation, and Code of Civil Procedure section 580b is inapplicable for that reason alone. In other words, the deed of trust was not "a deed of trust or mortgage given to the vendor to secure payment of the balance of the purchase price of that real property . . . ." (Code Civ. Proc., § 580b.) The Wagners were not the vendors or sellers of the property.

Second, the Wagners' claim to recover on the note, as stated in their cross-complaint, was not pursued at trial. The trial court therefore stated in its tentative decision: "There was no evidence introduced at trial to prove this sum and no recovery is awarded [on the promissory note]." Judgment was based on the accounting alone, and we find no violation of the antideficiency rules.

### THE AWARD OF PREJUDGMENT INTEREST

Mr. and Mrs. Jones also contend that the trial court erred in awarding prejudgment interest from August 19, 1994, through October 15, 1999, a date that was two weeks before the judgment was filed. They argue that the award is not sustainable because the Wagners did not request an award of prejudgment interest in their cross-complaint, nor did they make such a request at trial. In addition, Mr. and Mrs. Jones contend that the amount owed was not known with certainty until the final accounting was filed and approved, and that the partnership was not dissolved until the trial court declared it dissolved in the final judgment.

Civil Code section 3287, subdivision (a) states: "Every person who is entitled to recover damages certain, or capable of being made certain by calculation, and the right to recover which is vested in him upon a particular day, is entitled also to recover interest thereon from that day, except during such time as the debtor is prevented by law, or by the act of the creditor from paying the debt."

▪ The Wagners point out that their cross-complaint prayed for "such other relief as the court deems just and proper" and that such a prayer has been held to encompass a request for prejudgment interest. (*Segura v. McBride* (1992) 5 Cal.App.4th 1028, 1041 [7 Cal.Rptr.2d 436] ["This prayer is sufficient for the court, on its own, to invoke its power to levy such prejudgment interest as it deems just and equitable."].) Although there is an issue as to whether prejudgment interest was properly awarded under Civil Code section 3287, subdivision (a) or subdivision (b), or section 3288, the differences are not material here because we agree with the Wagners' further contention that Mr. and Mrs. Jones waived their objections by not raising them in the trial court.

On September 3, 1999, after ruling on the objections to the accounting, the trial court ordered the Wagners' counsel to serve a proposed judgment on Mr. and Mrs. Jones, with 15 days' opportunity to object. The proposed final judgment, which was served on Mr. and Mrs. Jones on October 5, 1999, contained a provision for prejudgment interest. On October 11, 1999, the court notified the parties that it would sign and file the proposed final judgment unless objections were received before October 29, 1999. On October 29, 1999, Mr. and Mrs. Jones filed objections to the accounting which the trial court found were identical to those overruled earlier. The court noted that Mr. and Mrs. Jones had not objected to the form of the proposed judgment, and it therefore adopted the proposed judgment as the judgment of the court.

We find the Wagners' citing of *Bihun v. AT&T Information Systems, Inc.* (1993) 13 Cal.App.4th 976 [16 Cal.Rptr.2d 787], overruled on other grounds in *Lakin v. Watkins Associated Industries* (1993) 6 Cal.4th 644, 664 [25 Cal.Rptr.2d 109, 863 P.2d 179], to be appropriate. ▪ The *Bihun* court noted, in regard to a claim that the trial court erred in awarding prejudgment interest, that "[a]s a general rule issues not raised in the trial court cannot be raised for the first time on appeal. [Citation.]" (*Bihun, supra,* 13 Cal.App.4th at p. 998.) Although the court went on to discuss exceptions to the rule in cases involving important questions of policy, no such question is raised here, and we conclude that the general rule applies. Since Mr. and Mrs. Jones did not object to the award of prejudgment interest in the trial court,

they may not do so now. In other words, "[h]aving failed to give the trial court an opportunity to correct the claimed defects in the statement of decision, [plaintiffs] cannot fairly be permitted to complain of them now." (*Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1350 [284 Cal.Rptr. 113].)

In any event, we also agree with the Wagners that the award of prejudgment interest was discretionary here, and Mr. and Mrs. Jones have not shown any abuse of that discretion. (*Bullis v. Security Pac. Nat. Bank* (1978) 21 Cal.3d 801, 814-815 [148 Cal.Rptr. 22, 582 P.2d 109, 7 A.L.R.4th 642].) As our Supreme Court held in *Bullis*, "the decision to award prejudgment interest may not be overturned unless the trial court abused its discretion. A trial court's exercise of discretion will be upheld if it is based on a 'reasoned judgment' and complies with the '. . . legal principles and policies appropriate to the particular matter at issue.' [Citations.]" (*Id.* at p. 815.)

## DISPOSITION

The judgment is affirmed.

Ramirez P. J., and Gaut, J., concurred.