Filed 12/23/21  Menasco v. Iancu CA1/4

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIRST APPELLATE DISTRICT

## DIVISION FOUR

| | |
|---|---|
| JAMES KENNETH MENASCO et al.,<br><br>Plaintiffs and Respondents,<br><br>v.<br><br>JERI IANCU, as Executor, etc., et al.,<br><br>Defendants and Appellants. | A159733<br><br>(Contra Costa County Super. Ct. No. MSC16-01460) |

This appeal is from an order enforcing a settlement agreement under Code of Civil Procedure section 664.6.[1]  The appellants, Jerry and Constance Kilarr (the Kilarrs),[2] claim error on the grounds that there was a total failure of consideration supporting the settlement and, alternatively, that the respondents, James and Nikii Menasco (the Menascos), are guilty of unclean hands in procuring the settlement and therefore should be blocked from enforcing it on equitable grounds.  We shall affirm.

---

[1] All subsequent undesignated statutory references are to the Code of Civil Procedure.

[2] Counsel for the Kilarrs wrote to the court on April 26, 2021, and notified us that Jerry Kilarr has passed away.  By this letter, Jeri Iancu purported to appear as executor of Jerry Kilarr's estate.  Though normally we would expect a formal substitution motion to be made seeking to replace Ms. Iancu for Mr. Kilarr, we will deem counsel's letter to be such a motion and hereby grant it.

1

# I. BACKGROUND

In 2016, the Menascos filed a complaint against the Kilarrs alleging that in 2002 the two couples jointly purchased a 13-week timeshare unit in South Lake Tahoe; that the Menascos and the Kilarrs were thereafter partners in the ownership of the timeshare unit; that they agreed to share in the payment of timeshare expenses on a 50/50 basis; and that the Kilarrs failed to pay their share of the expenses. According to the Kilarrs, "[m]any years ago" they told the Menascos that "they could have" the Kilarrs' interest in the timeshare; but to the Kilarrs' surprise, "[a]fter not having heard from the Menasco[s] for about ten years," the Menascos "suddenly brought [this] lawsuit claiming that [the Kilarrs] were liable to them for half of the timeshare expenses going back to the time we told them they could have our interest."

The parties entered into a written settlement agreement in 2018 settling the Menascos' 2016 lawsuit pursuant to an arrangement in which the Kilarrs, who were still shown on the deed as joint owners of record, would sign a quitclaim deed, but then would immediately acquire the timeshare unit from the Menascos for $117,726 as part of a tax-free 1031 exchange (26 U.S.C. § 1031) that Jerry Kilarr had committed to undertake in connection with another real property transaction. The settlement agreement expressly recited that the court would retain continuing jurisdiction to enforce the settlement under section 664.6 for purposes of resolving any disputes under it.

The terms of the settlement agreement were not consummated, apparently because the parties had various disagreements about the recording of documents in connection with the purchase transaction, the form of the purchase agreement, the agreed price, and whether the Kilarrs were due a credit against the purchase price because the Menascos had already

2

sold all 13 weeks of their 2019 timeshare allotment when they agreed to the settlement in 2018 and had earned $17,607.35 from that sale. Due to these disagreements, Jerry Kilarr alleged, he was unable to close the tax-free 1031 exchange that he contemplated at the time he entered the settlement, which resulted in an $80,000 tax loss to him on that transaction.

The Menascos insisted that the terms of settlement should be honored. They filed a motion seeking to enforce the settlement under section 664.6, and as part of that motion asked the court to enter judgment not only ordering specific enforcement of the purchase agreement, but to add to the judgment amounts sufficient to compensate them for damages they allegedly suffered due to the Kilarrs having reneged on the purchase agreement. In a brief minute order entered August 26, 2019, following an in-chambers conference with the parties, the trial court granted the motion to enforce in part, but denied it insofar as the Kilarrs or the Menascos had damages claims against the other couple for failure to abide by the terms of the settlement. Any such claims for damages, the court ruled, should be brought in a separate action for breach of contract.[3]

The Kilarrs appeal from the August 26, 2019 minute order.[4]

## II. DISCUSSION

We must deal with an issue of appealability as a threshold matter. By itself, an order granting or denying a motion to enforce a consent judgment is

---

[3] The Menascos brought a subsequent action claiming damages against the Kilarrs, their counsel, and the brokerage agency and the broker who handled the Kilarrs' purchase of the timeshare unit pursuant to the settlement.

[4] Only James Menasco, acting in pro se, appeared as a respondent on appeal. Although James Menasco, a nonlawyer, purported to represent himself and Nikii Menasco in the respondents' brief, Nikii Menasco made no appearance (at least not one that we may recognize).

3

not normally an appealable order.  (*Howeth v. Coffelt* (2017) 18 Cal.App.5th 126, 131; see *City of Gardena v. Rikuo Corp.* (2011) 192 Cal.App.4th 595, 600.)  A stipulation to judgment pursuant to section 664.6 is, by definition, an agreement to entry of judgment upon stipulated terms (i.e., a consent to entry of judgment).  And generally, " '[a]n appealable judgment or order is a jurisdictional prerequisite to an appeal.  [Citations.]' . . . [¶] . . . Under the ' "one final judgment" ' rule, an appeal cannot be taken from a judgment that fails to resolve to finality all the causes of action pending between the parties."  (*Hedwall v. PCMV, LLC* (2018) 22 Cal.App.5th 564, 571.)  So far as we can discern, no formal judgment was ever entered "pursuant to the terms of the settlement" (§ 664.6) here, either in connection with entry into the settlement, or following the court's issuance of a minute order granting the Menascos' motion to enforce the settlement.

For the sake of efficiency, however, we may amend a minute order relating to a judgment to include a formal judgment, thereby saving from dismissal the attempted appeal of an otherwise nonappealable order by deeming it to be an appeal from an appealable judgment.  (*Hines v. Lukes* (2008) 167 Cal.App.4th 1174, 1183.)  This is possible because an order relating to the enforcement of an appealable judgment is itself appealable. (*Williams v. Thomas* (1980) 108 Cal.App.3d 81, 84–86.)  Under the circumstances, it is appropriate to exercise our power to amend the minute order rather than dismiss the appeal.  No purpose would be served by dismissal of the appeal with a remand for entry of a formal judgment, followed by the very same appeal.  Because the parties' written settlement is part of the record, we will construe the August 26, 2019 minute order to include a judgment embodying the terms of the settlement, and deem this appeal to have been taken from a judgment fully resolving all claims before the trial court.  That makes it appealable.

4

Turning to the merits of the appeal, the order enforcing the settlement is subject to a presumption of correctness (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564) and on this record that presumption has not been rebutted. Impliedly, the trial court must have found that none of the various breaches now alleged by the Kilarrs were material to the settlement, which explains why the court decided to enforce the settlement in part and to leave disputes over damages to a separate lawsuit. The Kilarrs now advance two lines of argument in support of the claim that granting the motion, even in part, was erroneous. First, they argue that the Menascos' alleged breaches of the settlement agreement amount to a total failure of consideration, allowing them to rescind the settlement. Second, they argue that the Menascos are guilty of unclean hands, and that on equitable grounds the settlement should be deemed unenforceable.

Neither of these legal arguments was properly presented to the trial court. After reciting the background facts, the entirety of the legal argument presented by the Kilarrs, as set forth in their May 2, 2019 opposition to the Menascos' motion to enforce the settlement, was as follows: "[T]he [Kilarrs] are no more responsible for getting the Deed recorded than are the [Menascos]. In an effort to be accommodating, [the Kilarrs] took the laboring oar of seeking to get the Deed recorded, and they did so in timely fashion. [The Kilarrs] thought they did everything right, and did not find out that there were any technical deficiencies in the Deed until this motion was filed and [the Kilarrs' counsel] made inquiry of the Recorder's office. [¶] Accordingly, [the Kilarrs] have done nothing wrong and there is no basis for enforcing the settlement agreement as a judgment against the [Kilarrs]. The motion should therefore be denied." Neither rescission nor unclean hands was mentioned.

5

Because the legal arguments now advanced on appeal were not presented to the trial court, they were forfeited. Generally, " 'issues not raised in the trial court cannot be raised for the first time on appeal.' " (*Jones v. Wagner* (2001) 90 Cal.App.4th 466, 481.) That rule applies with particular force to errors that could have been corrected if the objections have been raised below. (*Rebney v. Wells Fargo Bank* (1991) 232 Cal.App.3d 1344, 1350 [failure to raise objections to statement of decision].) Even if we were willing to entertain them, both were also impliedly rejected by the finding of a valid settlement, a finding that is supported by substantial evidence in the record. At oral argument, the Kilarrs focused their attention on the issue of rescission. Because delays occasioned by the Menascos deprived Jerry Kilarr of the opportunity to carry out the tax-free exchange he contemplated as part of the deal, they emphasized, the whole foundation of the settlement agreement was destroyed, which justifies rescission.

In a supplemental brief and supporting declaration opposing the Menascos' motion to enforce the settlement, the Kilarrs point out that they raised this argument in the trial court. Not exactly. Their supplemental papers argued, *factually*, that (1) as a result of what the Kilarrs alleged was the refusal of the Menascos to close the purchase transaction at issue here on the agreed terms, Jerry Kilarr suffered an $80,000 tax liability, (2) the Menascos knew Mr. Kilarr was using the transaction as part of a tax-free exchange, and (3) without the tax benefits Mr. Kilarr expected, the "deal in its current state differs from the deal as it was originally proposed." The Kilarrs' supplemental opposition papers were filed August 26, 2019, the same day as the hearing on the Menascos' motion to enforce the settlement. Even putting to one side the belated filing on the day of the hearing (which means it is not clear the court was even aware of any supplemental papers when it ruled), nothing in the supplemental brief or for that matter in any of the

6

papers accompanying it actually frames a *legal argument* that the settlement agreement should be rescinded.

If the legal question of rescission had been briefed in the trial court, the court would have been governed by well-established law. In a case of breach by nonperformance, the breach must be one that discharges the rescinding party from further contractual duty; a minor breach may be the basis of an action for damages, but not for rescission. (*Crofoot Lumber, Inc. v. Thompson* (1958) 163 Cal.App.2d 324, 332–333.) The Kilarrs insist they are entitled to rescind because "[f]ailure of consideration is the failure to execute a promise, the performance of which has been exchanged for performance by the other party." (*Bliss v. California Cooperative Producers* (1947) 30 Cal.2d 240, 248; see Civ. Code, § 1689, subd. (b)(2) [A party to a contract may rescind "[i]f the consideration for the obligation of the rescinding party fails, in whole or in part, through the fault of the party as to whom he rescinds."].) But materiality is a universally recognized common law prerequisite to rescission. (*Jacob & Youngs v. Kent* (1921) 230 N.Y. 239 (Cardozo, J.); see *Superior Motels, Inc. v. Rinn Motor Hotels, Inc.* (1987) 195 Cal.App.3d 1032, 1051.) By statute, it is an express requirement for rescission under Civil Code section 1689, subdivision (b)(4), and courts have read it into Civil Code section 1689, subdivision (b)(2) as well. (See *Wyler v. Feuer* (1978) 85 Cal.App.3d 392, 403.)

Citing *California Auto. Assigned Risk Plan v. Garamendi* (1991) 232 Cal.App.3d 904, among other cases, the Kilarrs fall back on a plea that we decide the question of rescission for them on appeal on the ground that materiality presents a pure question of law. (*Id.* at p. 909, fn. 6.) We cannot agree that it does on this record. Not only do the facts surrounding the delays in the escrow process remain hotly controverted, but

7

materiality is " 'ordinarily a question for the trier of fact' " (*Superior Motels, Inc. v. Rinn Motor Hotels, supra,* 195 Cal.App.3d at pp. 1051–1052). Among other things, there is the question of what the proper measure of economic harm is for the lost opportunity to claim a 1031 tax deduction (26 U.S.C. § 1031), and that question, at the end of the day, will turn on fact-specific considerations we cannot begin to resolve on this record. Accordingly, even if we were inclined to put aside the forfeiture and decide the question of materiality ourselves, we could not do so here.[5]

### III. DISPOSITION

Affirmed. Respondent James Menasco to recover costs on appeal.

STREETER, J.

WE CONCUR:

POLLAK, P. J.
ROSS, J.[*]

---

[5] We realize that, from the Kilarrs' perspective, a tax loss of $80,000 is anything but a "minor" matter, given the overall economics of the transaction at issue. But in this context, the word "minor"—a term of art in the law that describes the difference between a contractual breach warranting the remedy of rescission, on the one hand, and a breach that may only be remedied in damages, on the other—does not necessarily correlate with a party's subjective view of the importance of the breach at issue.

[*] Judge of the Superior Court of California, City and County of San Francisco, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

8